# THE

# CRIMINAL RECORDER.

The People *vs.* John C. Teal.  *Receiving Stolen Goods.*

NEW-YORK, March 1823.

The People *vs.* John C. Teal.

On an indictment for receiving stolen goods, knowing they were stolen, the Jury are to decide, from all the circumstances of the case the *intent* of the defendant whether he received the goods, knowing they were stolen, or not.*

JOHN C. TEAL was charged in an indictment in the usual form of receiving stolen goods, knowing they were stolen.

The facts of the case appear as follows : Teal was a painter, and kept his shop in Chapel, near Leonard street. He appropriated part of his house as a broker's office, into which he received pledges upon articles, or bought them of those who brought them there. It was proved that his wife also received articles in his absence, and often bought and received them in pledge of blacks, and others of very suspicious character.

In consequence of information obtained at the Police-Office, process was issued to search Teal's house for stolen goods, and a considerable variety was found ; among others, was a dressing desk which had been stolen from Joseph Gallis sometime in January, 1822 ; it was found in the back part of the house, and upon the officer's inquiring how long he had had it in his possession, answered about three years.

There was also found in this establishment a frock coat, stolen from John Kelley. No. 280 Water-street, on the 14th of July, 1822.

There was also found a shawl, stolen from the store of James M. Milnor, No. 278 Broadway ; it was stolen in December, 1822.

NEW-YORK,
March 1823.

The People
vs.
John C. Teal.

Also a piece of drabbets from the store of Tiffany & Co. It was proved by the police officers who went to visit the house, that there were secret places in the store where a number of articles were kept from the view of those who came into the store.

It was also admitted the defendant had no license to keep a broker's office.

*Price, and N. B. Graham,* his counsel, contended that the evidence was too light to warrant a conviction ; that it appeared, by the testimony of some of the witnesses, that Teal was in the habit of using great caution in . purchasing or receiving goods of suspicious persons : that he had denied many who had offered him goods when he thought there was a probability of their being stolen ; that the circumstance of his establishment being unlicensed, had nothing to do with the case : he had been fined, and the fine exacted : that it was sometimes impossible to avoid receiving goods that were stolen, from the. variety of persons who brought them there to pledge and sell.

*Maxwell, District Attorney, contra.*

The Court observed that the crime of receiving stolen goods, knowing they were stolen, was a growing evil, and were it not for these houses for the receipt of stolen articles, thieves and felons would not have those opportunities of plunder they now have : that it was the duty of Courts and Juries to examine carefully into cases of this description when brought before them : that it was sometimes extremely difficult to convict, even where the evidence was strong.

The Court observed the Jury were the proper judges

of the law and the fact; that there was some circumstan-
ces against the prisoner which they would notice.

1. There were places under the counter and in the store where goods, might be, and was secreted.

2. There was considerable property found up stairs.

3. Upon being questioned by the officers who made the search, and even now before the Court and jury does not give a satisfactory account how they came in his possession.

4. A great number of witnesses have been called who testify that he has a bad character.

5. There was a great quantity of stolen goods found in the house.

The court further observed there were other circumstances, in his favor.

1. Part of the goods were found in the store, open to the view of those who called in.

2. There were a number of letters, written with a pen, on the bottom of the dressing box, by which the owner was enabled to identify it: they were suffered to remain although it is presumed the defendant had the box in his possession a considerable time.

3. A number of witnesses testify they believe him to be an honest man.

And concluded by saying that it was a proper subject for their consideration whether the prisoner was guilty of receiving stolen goods, knowing they were stolen: that they should weigh the evidence, and decide accordingly: that they had a right in this case, as in others to make up their minds upon a full view of the case, and to judge from all the circumstances, that it was the only means they could take to discover the *intent* the defendant

NEW-YORK, received the goods: that if, from a full view of the facts,
March 1823.
and the natural and fair deductions flowing from them,
The People they thought him guilty, it was their province to pronounce
*vs.*
John C. Teal. him so ; if, on the contrary they thought the facts insuffi-
cient, and the inferences arising from them unsatisfactory,
they would acquit.

The Jury found a verdict of guilty against the de-
fendant.

*NOTE.—The offence of receiving stolen goods, knowing they were stolen

See the sev-
eral statutes:
3 & 4. W. &
M. C. 9 § 2. 5
Ann. C. 31. §5
21. Geo. 3. C.
69. 29. Geo. 2
C. 30. 10. Geo
3. C. 48.
    For the con-
struction of
the above
statutes, see 1
Ld.    Raym.
711. 2 East. p.
744. 746. 2 Ld
Raym 1370 1.
Leach,    241.
468.   472.  2.
Leach,    693.
564.  640.   1
East. 754.

was merely a misdemeanor at common law, and the offender could
not be convicted as an accessary unless he harbored or assisted the
thief. 1. Hale, 530. 616.  A number of statutes have been passed in
Great Britain making the offence penal, and declaring the offender
an accessary to the felony.  Under these statutes it is now common
to charge the prisoner as being accessary to the felony.  He may,
however, be prosecuted and convicted at common law for a misde-
meanor. Under these statutes it is not necessary that he should have
bought the goods, or that he received them to sell again, or that he
had an interest in them.   It is enough if he received them to assist
and screen the original offender .2.  2 East. P. C. 876.  But it has
been held, that if the prisoner can show he had no evil design, but
that the possession was really innocent, although he cannot excuse
himself by the means prescribed, he will be acquitted.   Chitty, C.
L. Vol. 3. p. 387.   Where a widow was indicted for having na-
val stores which had been wrought into table linen, and it was
shown that her husband had bought them many years ago at a pub-
lic sale, that at his death they came, by act of law, to her, and that
she had always used them openly and without disguise, Mr. Justice
Foster directed the Jury to acquit her.   Ibid. Foster, 439.   It has al-
so been decided, that where the felon is unknown, the indictment will
be good if it so describe him, but where he is known, it must be
stated, or the indictment will be invalid , as where the principal was
described in the indictment as unknown, and his name appeared on
the bill as a witness before the Grand Jury, the Judge directed an ac-
quittal. 3 Camp. C. 2. 64.

Our statute relating to this offence may be found in Rev. L. vol. 1. p. 410. It enacts, "Where any person shall buy or receive any goods "or chattels, of any value whatsoever, that shall have been feloni- "ously taken away, or stolen from any other person, knowing the "same to be stolen, whether the principal be convicted or not, shall, ,' &c."

NEW-YORK, March 1823.

Under this section of the statute a number of convictions have taken place.

City-Hall Rec. vol. 1. p. 66. In Jeremiah Hill's case it was held, that the testimony of the thief who stole the goods, that the prisoner received them, knowing they were stolen, is not sufficient to convict where the character of the prisoner has heretofore been good.

Ibid. vol, 3. p 95. The mere finding an article stolen in possession of a party charged with receiving it, knowing it to be stolen, without other evidence, is insufficient to produce a conviction.

Ibid. vol 6. p. 97. In Daniel Bell's case it was held that on an indictment for receiving stolen goods, knowing that they were stolen, evidence will not be admitted to show, that stolen goods, not laid in the indictment, were found in the house of the prisoner.

13 John, Rep. p. 90. On the trial of an indictment for stealing a bank note, bill, &c. under the statute, (1 N. R. L. 174. Sess. 24. Ch. 88.) parol evidence of the contents of the bills or notes stolen, is admissible without accounting for their nonproduction.

3 John Rep. p. 203. If, on examination of a charge of suspicion of felony, or of having stolen goods, the magistrate be satisfied that there is no ground of suspicion, he may dismiss the person accused.

See also Mass. Rep. vol. 2. p. 14. vol. 3. p. 126.